UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
 :
MITCHELL FRANK, :
 :
                           Plaintiff, :     12 Civ. 2253 (KBF)
 :
        -v- :     <u>MEMORANDUM DECISION</u>
 :     <u>& ORDER</u>
REASSURE LIFE INSURANCE CO., :
 :
                          Defendant. :
------------------------------------------------------------- X

KATHERINE B. FORREST, District Judge:

     Alzheimer's disease is a tragic affliction, from which plaintiff Mitchell Frank suffers. With the instant lawsuit, plaintiff seeks payment of insurance proceeds relating to a disability policy (the "Policy") administered by defendant Reassure Life Insurance Company ("Reassure").

     Both parties have now moved for summary judgment as to what the Policy provides plaintiff in terms of the type and amount of benefits owed. Plaintiff has moved for summary judgment regarding residual disability benefits; defendant has moved for summary judgment as to all claims including any claim for benefits for total disability. The former motion was fully submitted as of August 24, 2012, and the latter, as of September 7, 2012.[1]

     The essential facts relating to plaintiff's condition, his work history, initial payment of insurance proceeds, and premium payments, are undisputed. At issue is the interpretation of the Policy itself--and whether plaintiff's claims for payment

---

[1] Plaintiff has also filed a motion to strike which was fully submitted as of September 7, 2012.

1

of additional benefits are required. The interpretation of the Policy is a legal question and thus, one that the Court may (and does) resolve on summary judgment. In doing so, the Court is mindful of the human tragedy of this terrible disease and the difficulties into which it places those afflicted and their families. The Court is likewise mindful of the necessity of interpreting insurance policies according to their unambiguous terms.

For the reasons set forth below, defendant's motion for summary judgment is GRANTED and plaintiff's motion is DENIED.

I.      FACTUAL BACKGROUND

The facts--taken from the parties' Local Civil Rule 56.1 statements--are undisputed unless otherwise stated.[2]

   A.   The Policy

On April 3, 1987, Mitchell purchased a long term disability policy from Maccabees Mutual Life Insurance Company. In 1999, Maccabees transferred the Policy to Reassure.

The Policy provides that in order for the insured to obtain any disability coverage, the "Accident or Sickness" that caused the disabling condition must occur or first manifest itself "while this Policy is in force." "Accident" is defined as "an

---

[2] Plaintiff has moved to strike not only certain documents submitted in support of defendant's summary judgment motion, but also objections and allegations that were not supported by admissible evidence in violation of Fed. R. Civ. P. 56 and Local Civil R. 56.1. The Court, as on any summary judgment motion, has considered only admissible evidence and has not considered any purported facts that are unsupported by the record. Accordingly, plaintiff's motion is denied as moot.

accidental bodily injury that occurs while this Policy is in force." "Sickness" under the Policy is

> a sickness, disease or pregnancy that a) first manifests itself while this Policy is in force or b) which began prior to the Date of Issue of this Policy if it was disclosed on the application. The word manifests means becomes known to you by the presence of symptoms that would cause an ordinarily prudent person to seek medical attention.
>
> The Policy sets forth the terms of a "Total Disability":
>
>> TOTAL DISABILITY means that due to Accident or Sickness you cannot perform the material duties of your regular occupation and are not engaged in your own or another occupation.
>>
>> We will pay you the Monthly Benefit shown on the Schedule Page for as long as you are Totally Disabled:
>> - after you have been Disabled for the Elimination Period
>> - but not beyond the applicable Benefit Period Limit for Accident or Sickness
>
> The Policy also sets forth the terms for Residual Disability benefits:
>
>> RESIDUAL DISABILITY means that you are engaged in your regular or another occupation and your income is reduced due to Accident or Sickness by at least 20% of your Prior Income.
>>
>> We will pay a Residual Disability Monthly Benefit for as long as you are Residually Disabled:
>>
>> - if Residual Disability begins before your age 65,
>> - after you have been Disabled for the Elimination Period,
>> - but not beyond the Benefit Period Limit.
>>
>> We will not pay Residual Disability Benefits beyond your age 65 unless Disability began on or after your 63rd birthday and before your 65th birthday. In such a case, we will pay Residual Disability Benefits for a maximum of 2 years.
>>
>> The Residual Disability Monthly Benefit will be equal to the Monthly Benefit shown on the Schedule Page multiplied by your Percentage Loss of Monthly Income.

Under the Policy, "Partial Disability" means that the insured is "unable, due to Accident or Sickness, to work full-time or [is] able to perform some but not all of the material duties of [his] occupation." When an individual is partially disabled as defined by the Policy, the insured is entitled--"during the first 6 months of Partial or Residual Disability"--to "either a Partial or Residual Disability benefit. The benefit will not be less the 50% of the Monthly Benefit of the Policy."

The Policy provides that "[i]f, within six months of a period of Disability, you are Disabled again from the same or related causes, we consider this a continuation of the previous Disability." With respect to Concurrent Disabilities, the Policy provides, however: "We will not pay benefits for both Accident and Sickness at the same time. We will not pay benefits under the Total, Residual and/or Partial Disability Benefit at the same time. We will treat any period of Disability due to one or more causes as a single period of Disability. We will base benefits on that single period."

The Policy states that the "Benefit Period Limit" is the "longest period of time that benefits will be paid for a Total or Residual Disability or combination thereof." As discussed below, the Schedule of Benefits incorporated into the Policy contains the Benefit Period Limits.

The Policy contains a typical Notice of Claim provision, stating: "You must give us written notice of claim within thirty-days after the beginning of any loss covered by this Policy, or as soon as it is reasonably possible."

4

The face of the Policy states, "INSURANCE NON-CANCELLABLE AND GURARANTEED RENEWABLE TO AGE 65; CONDITIONALLY RENEWABLE FROM AGE 65-75. You can renew this Policy to the policy anniversary closest to your 65th birthday by paying the premiums shown on the Schedule Page as they become due." The renewal right is contingent upon the insured being actively at work on the policy anniversary closest to age 65--and, of course, upon payment of premiums.

The Policy also incorporates a "Schedule of Benefits" (the "Schedule") which supplements its terms. Under the Schedule, the "Elimination Period"--"the number of consecutive days of Disability after the date of first Medical Care for which no benefits are payable"--for both Residual and Total Disability is 90 days. Further, the Schedule sets the benefit period limit for Accident and Sickness of Total and Residual Disability Benefits, with the caveat that "[e]xcept that if disability begins on or after the Insured's 56th birthday and prior to age 65, benefits payable after age 65 will be reduced to the following percentage of the monthly benefit payable immediately prior to age 65 . . . . If disability begins at age 63 or later, benefits will be payable for 2 years before they will be reduced."

If the Policy terminates due to non-payment of premiums, the Policy allows for reinstatement upon an application in writing--and likely requires payment of past premiums. If the Policy is reinstated, "The reinstated Policy will not cover loss due to Accident occurring before the date of reinstatement. It will not cover loss due to Sickness which begins less than 10 days after the date of reinstatement."

B.  <u>Plaintiff's Illness</u>

Mitchell was a bond salesman for many years. He continued to work until 2010--even after he had begun to experience memory loss.

Plaintiff first sought treatment for his memory loss in March 2007 at the age of 62.[3] There are no facts in the record to indicate that plaintiff had sought medical treatment for his condition prior to that time. In March of 2007, plaintiff informed his physician that he was still working full time, but that "his performance in this capacity has not suffered."

Plaintiff sought medical advice and treatment for the same condition in April 2009, May 2009 and during the period from May 2009 to October 2010. In May 2010, he underwent a neuropsychological evaluation, which found that plaintiff's memory loss condition was consistent with Alzheimer's disease.

There is no doubt or argument that today Mitchell is totally disabled due to the effects of Alzheimer's disease.

C.  <u>Plaintiff's Claim</u>

In February 2008, plaintiff cancelled his Policy with Reassure and requested a premium refund. Reassure cancelled the Policy, effective as of March 3, 2008, and issued the refund.[4]

---

[3] Plaintiff disputes this fact on the grounds that his "lawyers are still attempting to ascertain when Mitchell first attempted to obtain treatment for his memory loss," since they have to obtain his medical records. Plaintiff has not moved pursuant to Rule 56(d) on this issue nor has he provided admissible evidence creating a dispute of material fact on the issue. Accordingly, the Court deems this fact undisputed for purposes of this motion.

[4] Plaintiff objects to the facts relating to his seeking cancellation of the Policy on the grounds that he cannot remember what he did or did not do and thus, his conduct with respect to cancellation of the Policy can only be determined through discovery. He also states that "he has no idea whether

6

On September 27, 2010, plaintiff's wife, Joy Frank, contacted Reassure regarding plaintiff's condition. Plaintiff argues that Mrs. Frank filed a claim for plaintiff's residual disability benefits in September 2010, while Reassure asserts that Mrs. Frank contacted Reassure to notify it of plaintiff's condition and ask how to file a claim. From review of the September 27, 2010, letter, the Court finds that Mrs. Frank sought to file a notice of claim with Reassure. The letter concludes, "Please advise how he may file a claim and what he needs to do now that he realizes who has his disability policy."

In October 2010, Mrs. Frank made a claim for benefits stating that plaintiff had experienced memory loss symptoms commencing in 2000 and was not currently working (in 2010). Based at least in part on the fact that plaintiff had sought medical treatment in 2007 for memory loss prior to the 2008 cancellation of his Policy, Reassure administratively reinstated the Policy. On December 28, 2010, Reassure paid plaintiff partial disability benefits of $30,000.

On December 29, 2010, Reassure informed Mrs. Frank by letter that plaintiff had cancelled the Policy two years prior--i.e., before his 65th birthday. In the December 29 letter, Reassure stated that "[b]ased on the medical information provided, we do not believe Mr. Frank's Alzheimer's disease caused him to inappropriately cancel the policy." The letter also noted that "Mr. Frank may be eligible for Partial or Residual Disability Benefits." A January 28, 2011, letter from Reassure to Mrs. Frank acknowledged the concession from the December 29 letter.

---

Reassure cancelled the Policy" without discovery. Plaintiff does not, however, move pursuant to Rule 56(d) on this issue. Accordingly, the Court deems those facts undisputed based upon Reassure's business records submitted in support of those facts.

7

In communicating over her claim for benefits on plaintiff's behalf, Mrs. Frank provided Reassure with various documents, including tax returns and medical records. Tax returns provided by Mrs. Frank indicated that plaintiff had continued to work in his regular occupation past the time that he had cancelled the Policy in 2008.

Reassure determined that since plaintiff had sought medical treatment for his condition prior to the Policy cancellation, but was also working at that time (and therefore was not "Totally Disabled" as defined by the Policy), he was entitled to Partial and Residual Disability benefits for the period from March 2007 to until the date that he turned 65 (May 15, 2009). As discussed above, the Policy provides for payment of Residual Benefits only to age 65. It is undisputed that plaintiff did not renew the Policy pursuant to the applicable renewal terms, which would have been on or before the anniversary closest to his 65th birthday (April 3, 2009).

Mrs. Frank, on behalf of plaintiff, sought payment by Reassure of Total Disability Benefits back to 2000.

With this action, plaintiff seeks long-term disability benefits (or Total Disability Benefits) under the Policy.

II. DISCUSSION

  A.  Legal Standard

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R Civ.

P. 56(c). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In making that determination, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings. Fed. R. Civ. P. 56(e); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 539 F.3d 159, 166 (2d Cir. 2010) (citations omitted). In addition, self-serving affidavits, sitting alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment. See BellSouth Telecommc'ns, Inc. v. W.R. Grace & Co.-Conn., 77 F.3d 603, 615 (2d Cir. 1996). Only disputes over material facts--i.e., "facts that might affect the outcome of the suit under the governing law"--will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co.,

9

Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

 B. Choice of Law

The parties have spent pages briefing the applicable choice of law rules. Frankly, whether this Court were to apply New Jersey law (advocated by plaintiff) or Connecticut law (advocated by defendant) would not change the outcome of this case.[5] Nevertheless, the Court finds that New Jersey law applies.

Although it is true, as defendants argue, that this Court has jurisdiction over this case based on diversity which would normally require application of the choice of law rules of the state in which it sits, Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 711 (2d Cir. 2002), defendants ignore the provision of the Policy which provides that the law of the state in which the insured lived at the time the Policy issued controls: The Policy states, "Any provision of this Policy which conflicts on its Date of Issue, with the statutes of the state where you live will be automatically amended."

New York has a strong policy favoring enforcement of choice of law provisions in contracts. See Welsbach Elec. Corp. v. MasTec N. Am., Inc., 7 N.Y.3d 624, 629 (2006). Thus, because it is undisputed that plaintiff lived in New Jersey at the time the Policy issued and because the Policy designates the law of the state of the insured as applicable law, the Court will apply New Jersey law here.

---

[5] Defendant concedes the same--"Reassure[] . . . demonstrates that it should prevail on these summary judgment motions even if the Court were to apply state law Plaintiff deems most favorable to him."

10

C.  <u>Analysis</u>

Plaintiff argues that the Policy should be interpreted to provide Residual Benefits for life, or to deem him "Totally Disabled" as of 65. The question before this Court is whether the facts relating to the onset of plaintiff's Alzheimer's--and his diagnosis with it--and the terms of the Policy come together such that Reassure is required to pay lifetime residual or total disability benefits. They do not.

Disability policies should be interpreted as written, <u>Pizzullo v. New Jersey Mfr. Ins. Co.</u>, 196 N.J. 251, 270, 952 A.2d 1077, 1088-89 (N.J. 2008), and the policy's terms given their ordinary meaning, <u>Nav-Its, Inc. v. Selective Ins. Co. of Am.</u>, 183 N.Y. 110, 119, 869 A.2d 929 (N.J. 2005). As with any contract, courts will not interpret any term of an insurance policy so as to render it superfluous. <u>Porreca v. City of Millville</u>, 419 N.H. Super. 212, 233 (N.J. App. Div. 2011). Here, the terms of the Policy unambiguously demonstrate that (even in this unfortunate situation) plaintiff has been paid all to which he is entitled.[6]

Plaintiff was working full time in 2007 when he first sought medical treatment for his memory loss (which was subsequently diagnosed as Alzheimer's disease)--and, at that time, his performance at work had not suffered based upon his condition. Plaintiff was also working full time in 2008 when he cancelled the Policy. He was not, under the terms of the Policy, "Totally Disabled"--<u>i.e.</u>, unable to "perform the material duties of your regular occupation and are not engaged in your

---

[6] Plaintiff's argument that policy terms should be construed in accordance with the insured's expectations is applied only where policy terms are deemed ambiguous. The Court finds that the Policy here is unambiguous as to its terms.

11

own or another occupation." Accordingly, at that time, he was not eligible for Total Disability Benefits.

He was, however, eligible for--and did receive--Residual Disability Benefits from the date of his treatment (2007) through his 65th birthday. Payment of those benefits in that manner, for that length of time is entirely consistent with the terms of the Policy and the Schedule of Benefits incorporated therein.

He also failed to reinstate the Policy on the anniversary closest to his 65th birthday (i.e., in April 2009), which would have allowed him benefits for his condition (because it was diagnosed prior to what would have been the date of reinstatement). Instead, plaintiff's wife attempted to reinstate the Policy as of 2010. That attempt was ineffective under the "Reinstatement" provision of the Policy itself.

Because plaintiff was paid all the Residual Benefits under the Policy to which he was entitled, plaintiff's motion for summary judgment is DENIED. Because plaintiff is not entitled to Total Disability Benefits, defendants' motion is GRANTED.

III. CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is DENIED and defendant's motion is GRANTED. Plaintiff's motion to strike is DENIED AS MOOT.

The parties should provide a joint letter to the Court no later than November 16, 2012, informing this Court as to whether this decision resolves this action in its entirety and if not, what remains to be determined.

The Clerk of the Court is directed to close the motions at Docket Nos. 24, 33, 41.

SO ORDERED:

Dated: New York, New York
       November 9, 2012

_____
Katherine B. Forrest
UNITED STATES DISTRICT JUDGE